Peter Strojnik (Sr.),
7847 N. Central Ave.
Phoenix, Arizona 85020
Telephone: (602) 524-6602
ps@strojnik.com

FILED
CLERK, U.S. DISTRICT COURT
MAY - 6 2019
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Peter Strojnik (Sr.),<br><br>Plaintiff,<br><br>vs.<br><br>Pasadena Robles Acquisition, LLC dba Hilton Pasadena<br><br>Defendant. | Case No: 2:19-cv-02067-AB-PJW<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FRCP 12(b)(1)**<br><br>conditionally<br><br>**REQUEST FOR EVIDENTIARY HEARING**<br><br>alternatively<br><br>**LEAVE TO AMEND** |

Defendant argues that "Plaintiff is unable to demonstrate either a genuine intent to return or deterrence…". Doc. 11-1 at 1:23-25. Defendant's argument is based on the allegations in the Complaint, taken as true, a google map confirming that the distance between Phoenix and Pasadena is 362 miles, and the fact that Plaintiff filed 13 cases in this District.

In developing its argument, however, Defendant's Motion thoroughly ignores the 9th Circuit Court of Appeals' inspirational decision *Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017). It further ignores the *plausibility* standard announced in *D'Lil*, infra, as more fully developed in *Nanni*, infra. As a result, Defendant's Motion is lacking and must be denied.

### SUMMARY OF ADA STANDING IN THE 9TH CIRCUIT

The following three elements constitute the "irreducible constitutional minimum" of standing: (1) an "injury in fact" suffered by the plaintiff; (2) a causal

connection between that injury and the defendant's conduct; and (3) a likelihood that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff experiences continuing adverse effects where a defendant's failure to comply with the ADA deters him/her from making use of the defendant's facility. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 953 (9th Cir. 2011) (en banc). This is the "deterrent effect doctrine." *Id.* at 949-50. "[W]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury. . . ." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002) (quoting 42 U.S.C. § 12188(a)(1)). "So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues." *Id.* at 1137.

> From *Chapman*, 631 F.3d at 944:
>
> We now clarify that when an ADA plaintiff has suffered an injury-in-fact by encountering a barrier that deprives him of full and equal enjoyment of the facility due to his particular disability, he has standing to sue for injunctive relief as to that barrier and other barriers related to his disability, even if he is not deterred from returning to the public accommodation at issue. First, we hold that an ADA plaintiff can establish standing to sue for injunctive relief either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility. Second, we hold that an ADA plaintiff who establishes standing as to encountered barriers may also sue for injunctive relief as to unencountered barriers related to his disability.

As the 9th Circuit Court of Appeals held in *Pickern* (and confirmed in *CREEC*), "under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury." The injury continues so long as ADA violations continue. *Id.* A named Plaintiff who alleges "that [he or she] intend[s] to visit the relevant hotel, but ha[s] been deterred from doing so by the hotels' non-compliance with the ADA... [but] will visit the hotel when the non-

compliance is cured" sufficiently alleges standing. *Id.* His/her harm is "concrete and particularized", "and their intent to visit the hotels once they provide [ADA compliant facilities] for the disabled renders their harm "actual or imminent, not conjectural or hypothetical." *Id. quoting to Lujan*, 504 U.S. at 560.

In ADA context, the Ninth Circuit finds an "injury in fact" sufficient to support standing where a barrier deters a disabled person from "returning" to a place of business. *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1137 (9th Cir. 2002). This is known as the "deterrent effect doctrine." *Id.* A plaintiff has standing under the deterrent effect doctrine if a plaintiff encountered barriers related to his disability and is thereby deterred from returning. *Chapman*, 631 F.3d at 939; *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1031 (9th Cir. 2008); *Doran*, 524 F.3d at 1034.

In *CREEC*, three plaintiffs attempted to visit three hotels, but were deterred from doing so when they called the hotels prior to their visits and learned that the hotels did not provide accessible shuttle services. Thus, despite not physically visiting the hotels, the plaintiffs had standing to bring claims under the ADA because they attempted to access the hotels by calling, learned about the barriers through their phone calls, and intended or planned to visit the hotels once the barriers were removed. *Id.* at 1098-100.

The defendant in *CREEC* contended, among other reasons, that plaintiffs (1) did not actually visit the hotels they just telephoned the hotel to inquire about transportation services available to disabled guests; (2) they do not intend to do so unless and until the alleged ADA violations are remedied; and (3) plaintiffs were motivated to visit the hotels only by their desire to test them for ADA compliance. *Id.* The court rejected all of defendant's arguments. First, the court held that "the purported requirement urged by [defendant] of a 'personal encounter' with an access barrier lacks foundation in Article III" and "actually visiting a hotel, as opposing to phoning, does not make a plaintiff's injury any more concrete." The court further held that "[i]t is the plaintiff's 'actual knowledge' of a barrier, rather than the source of that knowledge, that is determinative." *Id.* (citing to *Pickern*, 293 F.3d at 1135) (emphasis added).

Moreover, the court held that the named plaintiffs need not intend to visit the hotels until after remediation. The court rejected defendant's argument that plaintiffs must

establish a sufficient likelihood that they will again be wronged in a similar way because, the court reasoned, the injury continues so long as the equivalent access is denied. While relying on Tenth Circuit case law, the court further held that the motivation to visit a hotel as a tester is irrelevant to the question of standing under Title III of the ADA.

In their Complaint, the Plaintiffs in *CREEC* – as Plaintiff here – alleged that they were "presently deterred from visiting [defendant's] hotels." The plaintiffs in *CREEC* also alleged – as Plaintiff here – that "they intend to visit the relevant hotels, but have been deterred from doing so by the hotels' noncompliance with the ADA." *Id.* On the basis of this allegation, the court concluded that "[plaintiffs'] harm is 'concrete and particularized,' and their intent to visit the hotels once they provide equivalent shuttle service for the disabled renders their harm 'actual or imminent, not conjectural or hypothetical.'" *Id.*

Defendant's Motion limits its argument to the "injury in fact" prong of article III standing.

**1. Defendant's Attack on Standing is Facial; therefore, all Allegations are Accepted as True.**

In a facial attack, the moving party asserts that the lack of federal subject matter jurisdiction appears on the "face of the pleadings." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In the case of a facial attack, the court is required to accept as true all factual allegations set forth in the complaint, to the extent that all such allegations are not contradicted by the documents incorporated by reference. *Id.*

**2. Facts Alleged in the Complaint and Judicially Noticed Facts to be Taken as True**

Plaintiff alleges, in compliance, with *CREEC* as follows:

3. Plaintiff is a single man currently residing in Maricopa County, Arizona. Plaintiff is and, at all times relevant hereto has been, legally disabled by virtue of a severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, prostate cancer and renal cancer, degenerative right knee and is therefore a member of a protected class under the ADA and Unruh.

4. Plaintiff suffers from physical impairments described above which impairments substantially limit his major life activities. Plaintiff walks with difficulty and pain and requires compliant mobility accessible

features at places of public accommodation. Plaintiff's impairment is constant, but the degree of pain is episodic ranging from dull and numbing pain to extreme and excruciating agony.

\*\*\*

12. Plaintiff intends to visit Defendant's Hotel at a specific time when the Defendant's noncompliant Hotel becomes fully compliant with ADAAG; just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

13. The ADAAG violations in this Verified Complaint relate to barriers to Plaintiffs mobility. This impairs Plaintiff's full and equal access to the Hotel which, in turn, constitutes discrimination satisfying the "injury in fact" requirement of Article III of the United States Constitution.

14. Plaintiff is deterred from visiting the Hotel based on Plaintiff's knowledge that the Hotel is not ADA or State Law compliant as such compliance relates to Plaintiff's disability.

15. Plaintiff intends to visit Defendant's Hotel at a specific time when the Defendant's noncompliant Hotel becomes fully compliant with ADAAG; just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

15. Plaintiff intended to visit the Pasadena area and therefore, reviewed hotel booking websites as documented in Addendum A[1] which is by this reference incorporated herein for all purposes.

\*\*\*

21. Plaintiff thereafter reviewed Defendant's online information relating to accessibility or lack thereof, including in particular photographs of the amenities at the Hotel all as more fully documented in Addendum A.

22. Online information relating to accessibility or lack thereof disclosed architectural barriers to accessibility as more fully documented in Addendum A.

---

[1] Appended to the Complaint as Addendum A. Addendum A to this writing relates to the frequency of Plaintiff's lodging in California.

5

23. Defendant has violated the ADA by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above and as outlined in Addendum A.

24. The ADA violations described in Addendum A relate to Plaintiff's disability and interfere with Plaintiff's full and complete enjoyment of the Hotel.

Defendant proffers, and Plaintiff does not object to, proof that Pasadena is a 5.5 hour drive away from Phoenix, and that Plaintiff filed 13 cases in this District.

### 3. Deterrence is Properly Pled

Defendant argues that Plaintiff cannot show "genuine" deterrence. There is, of course, no requirement for showing of *genuine* deterrence, whatever that may mean. "Deterrence" is a fact onto itself. Deterrence occurs when a disabled individual encounters, or becomes aware of, a barrier to accessibility. *CREEC, Pickern*.

Plaintiff alleges that as a result of ADA violations at the Hotel and the booking websites, he is deterred from visiting there. This deterrence remains in effect until such time as the hotel becomes fully ADA compliant. *CREEC*. In addition, while Plaintiff was deterred from staying at Defendant's hotel, he genuinely spent the night at Hyatt Place Pasadena[2]. In connection, Plaintiff alleges at ¶25:

25. As a result of the deficiencies described above, Plaintiff declined to book a room at Defendant's Hotel but booked a room elsewhere.

Deterrence is properly pled.

### 4. Intent to Return is Properly Pled

While the question of jurisdictional standing is resolved by alleging deterrence, *Chapman*, Plaintiff also alleged fact satisfying the *intent to return* alternative method of standing:

---

[2]

> ● **Thanks, Peter!**
> **Your booking in Pasadena is confirmed.**
> ✓ **Hyatt Place Pasadena** is expecting you on **January 2**
> ✓ Your **payment** will be handled by Hyatt Place Pasadena. The "**Payment**" section below has more details

12. Plaintiff intends to visit Defendant's Hotel at a specific time when the Defendant's noncompliant Hotel becomes fully compliant with ADAAG; just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

It is not difficult to discern that this allegation is taken straight out of *CREEC*. Nonetheless, Defendant offers a novel, but incorrect, standard of alleging and proving intent to return. There is no requirement that Plaintiff have a "true desire to return"; all he has to allege and prove that his return to the ADA offending facility is *plausible*.

**5. Defendant Conflates *True Desire to Return* with the *Plausibility* of Return.**

It is undisputed that Plaintiff harbors a *true desire to return* once the Hotel becomes ADA compliant, and so alleges in his Complaint. *See* Complaint at ¶12. Plaintiff nonetheless feels that the use of proper standards advances the legitimacy of legal argument.

Defendant's argument conflates the (newly proposed) standard of *true desire to return* with the *plausibility* of return. *Plausibility* is a profoundly *objective* standard while the *true desire to return* is a profoundly *subjective* and, indeed, speculative, standard. Defendant's proposed standard has been soundly rejected in the 9th Circuit in *D'Lil* (incorporating the *plausibility* standard) and *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447 (4th Cir., 2017) explaining the *Daniels Plausibility Principle*[3].

The *Daniels* Principle was developed by the 4th Circuit Court of Appeals in *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447 (4th Cir., 2017). The *Nanni* Court relied, in part, on 9th Circuit's *D'Lil* decision. In *Nanni*, the District Court found that Nanni, a mobility impaired Plaintiff, was not credible in his protestations of return, that Nanni was an ADA Tester, that Nanni had a significant ADA litigation history, that Nanni would only return to the Marketplace as "tester", that Nanni particular litigation history undermined the plausibility of his future injury theory and that Nanni was an opportunistic

---

[3] *Daniels v. Arcade, L.P.*, 477 Fed.Appx. 125, 129-30 (4th Cir. 2012)

litigant, rather than a bona fide patron of the Marketplace. Nanni specifically alleged that he planned to return to the Marketplace. *Nanni* 878 F.3d 449.

The Court of Appeals in *Nanni* rejected District Court's analysis and found that once the ADA Plaintiff encounters accessibility barriers, the proof of his *intent to return* is circumscribed by his *plausible* intention to return and not his *genuine* intention to return. The Court firmly held that his *plausible* intention to return is sufficient to demonstrate the likelihood of future injury, 787 F.3$^d$ at 455-56:

> Importantly, the *Daniels* principle—that when an ADA plaintiff has alleged a past injury at a particular location, his ***plausible intentions*** to thereafter return to that location are sufficient to demonstrate the likelihood of future injury—is entirely consistent with the decisions of our fellow courts of appeals. *See, e.g.*, *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013); *Gaylor v. Hamilton Crossing CMBS*, 582 Fed.Appx. 576, 580 (6th Cir. 2014) ; *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) ; *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000); ***D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1037 (9th Cir. 2008)***; *Tandy v. Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004) ; *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013). Put simply, we are satisfied that the *Daniels* decision properly described and applied the pleading obligations for standing with respect to *Lujan*'s injury-in-fact element. We therefore adopt the *Daniels* principle and apply it in disposing of this appeal. (Emphasis supplied)

Based on *CREEC, D'Lil* and *Nanni,* Defendant's position on "intent to return" is just not well developed.

It is likewise unclear why Defendant proffers 13 cases that Plaintiff filed in this District. The 9th Circuit Courts has adequately warned defendants not to rely on Plaintiff's historical case filings.   *See Moore v. Millenium Acquisitions*, LLC (E.D. Cal., 2016): "Defendants' evidence concerning plaintiff's history of engaging in ADA litigation has absolutely no bearing on the validity of plaintiff's accessibility claims presented in this action. [citations]". The *Moore* decision is based on *D'Lil* where the 9th Circuit Court of Appeals explained:

> The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants our most careful scrutiny. *See, e.g., Outley v. City of New York,* 837 F.2d 587, 592 (2d Cir. 1988). This is particularly true

in the ADA context where, as we recently explained, the law's provision for injunctive relief only "removes the incentive for most disabled persons who are injured by inaccessible places of public accommodation to bring suit.... As a result, most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled.... For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." [Citations] Accordingly, we must be particularly cautious about affirming credibility determinations that rely on a plaintiff's past ADA litigation.

The fact that Pasadena is 362 miles away from Phoenix likewise fails to shed light on the "intent to return" question. The very reason for the existence of hotels is to provide lodging to travelers *from far away*. Indeed, Plaintiff travels to California regularly, *see, e.g.*, Addendum A hereto (showing that plaintiff lodges in California on the average every 13 days.)

## 6. Distinction between Standing Based on 28CFR36.302 and Encounter of Accessibility Barriers through "Actual Knowledge".

California's intense beauty and breathtaking vistas are a beacon to world travelers and, not surprisingly, to folks from Phoenix. With the advent of the motorcar, aero plane, along with traveling websites, the travel to Arizona's neighboring State follows a pattern of logistics relevant to Plaintiff's Complaint.

**28CFR§36.302 Modifications in policies, practices, or procedures.**

(e) (1) Reservations made by places of lodging. A public accommodation ... shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party—

(ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;

Complaint alleges that Plaintiff consulted 1st and 3rd party booking website to determine whether the booking websites "identify and describe accessible features in the

hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs" in accordance with 28CFR36.302(e). *See* Complaint at ¶¶ 16-24 and Addendum A, pp 11-37. To the extent the booking websites do not comply with 302(e), or otherwise disclose architectural barriers to mobility, Plaintiff looks for accommodations elsewhere.

While this was not addressed by Defendant, it is vital to note that a booking website is *itself* a public accommodation *if* it impedes access to a public accommodation. *See National Federation of the Blind v. Target Corp.*, 452 F. Supp. 2nd 946 (N.D. Cal., 2006). The booking websites are places of public accommodation under the reasoning in *Target* because they impede Plaintiff's ability to book an accessible room. Therefore, the "intent to return" method of standing must be analyzed on both, (1) visiting the booking websites which are a computer mouse click away and (2) the hotel's geographical location. A computer click is no more than 12 inches away from Plaintiff at the time of this writing, and the geographical location is merely 5.5 hours away.

Defendant should also consider that 302(e) is a Catch-22 by design and foresight: When a hotel makes a representation of accessibility in order to comply with 302(e), it must do so accurately and truthfully *lest* it exposes itself to additional state law claims[4]. In order to avoid additional jeopardy, a few lodging websites simply state that the hotel is not completely ADA compliant thus exposing themselves to claims by admission.

### CONCLUSION AND PRAYER FOR RELIEF

Defendant's Motion is not well taken. To the extent that the Court wishes to adduce *factual* determination of standing, Plaintiff respectfully requests opportunity to disclose the frequency of his actual travels to California, *see, e.g.* Addendum A. Alternatively, if the Court finds a technical omission of *CREEC* allegations, Plaintiff requests leave to amend.

---

[4] *E.g.*, a claim for (1) Intentional Fraud and Deceit pursuant to Cal. Civ. Code §§1709 *et seq.*, (2) Fraud by Omission or Suppression of Fact pursuant to Cal. Civ. Code §1710(3), (3) Negligent Misrepresentation, (4) Violation of California's False Advertising Law pursuant to Cal. Civ. Code §§17500 *et seq.* and (5) Violation of California's Unfair Competition Law pursuant to Cal. Bus. & Prof. Code §§ 17200 *et seq.*

RESPECTFULLY SUBMITTED this 3rd day of May, 2019.

**PETER STROJNIK**

_____
Plaintiff

Original mailed to the District Court this 3rd day of May, 2019.

Copy e-mailed to:

Shane Singh, Shane.Singh@lewisbrisbois.com
Kendall C. Fisher, Kendall.Fisher@lewisbrisbois.com
Counsel for Defendant

/s/ps

**ADDENDUM A**

(Partial list of hotels where Plaintiff stayed between 3-15-18 and 1-23-19)

```
3-15-18   Ritz Carlton S.B.
3-18-18   Milliken Creek Inn
3-30-18   Welk Resort Desert
7-1-18    Colony Palms Hotel
7-4-18    Rancho Valencia Resort
7-8-18    L'auberge del mar
7-11-18   The Ranch @ Laguna Beach
7-12-18   The Mission Inn
8-6-18    Kimpton Shorebreak Hotel
8-7-18    Harbor View Inn S.B.
8-10-18   Bahia Hotel S.D.
10-9-18   La Quinta Resort & Club
10-12-18  Hotel Spero
10-14-18  Sheraton Hotel Petaluma CA
11-08-18  The Belamar Hotel, Manhattan Beach
11-10-18  Le Meridien, Santa Monica
11-27-18  Dream Inn, Santa Cruz
11-29-18  The Westin, San Jose
12-1-18   Intercontinental The Clement Monterey
12-10-18  The Georgian Hotel
12-11-18  U.S. Grant, S.D.
1-5-19    SLS Beverly Hills
1-23-19   Grand Hyatt, S.D.
```

12

Peter Strojnik
2375 E. Camelback Road, Ste 600
Phoenix, Arizona 85016

United States District Court Clerk's Office
Central District of California
350 West First Street
Los Angeles, CA 90012

RECEIVED
MAY - 6 2019
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

AB



$1.75⁰
US POSTAGE
FIRST-CLASS
85020
071500856298